111 Cal.Rptr.2d 829 (2001)
92 Cal.App.4th 411
Alta KAVANAUGH, Plaintiff and Respondent,
v.
WEST SONOMA COUNTY UNION HIGH SCHOOL DISTRICT et al., Defendants and Appellants.
No. A093779.
Court of Appeal, First District, Division One.
September 20, 2001.
Review Granted December 12, 2001.
*831 Robert J. Henry and Nancy L. Klein, Monterey, for appellants.
James D. Allen, San Diego, for respondent.
*830 SWAGER, J.
This appeal by the West Sonoma County Union High School District and its governing board is from a judgment granting a petition for writ of mandate and directing the district to reemploy respondent Alta Kavanaugh as a probationary certificated teacher, effective with the commencement of the 1999-2000 school year.[1]
The judgment was based on the trial court's reading of Education Code section 44916, which provides that new certificated employees must receive a written statement indicating their employment status and salary "[a]t the time of initial employment." [2] For a temporary employee, if the statement does not indicate the temporary nature of the employment, the employee is deemed to be a probationary employee. We conclude that the statute requires a school district to provide the statement when its governing board takes formal action to employ a new certificated temporary employee rather than on the date that employee first renders paid service to the district, and we reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. Introduction

Certain of the underlying facts are undisputed. During the summer of 1999, respondent, a certified secondary language arts teacher who had been teaching in the Hemet Unified School District, submitted various applications for teaching positions in Sonoma County. On August 12, she wrote to the personnel director of the West Sonoma County Union High School District (District), stating that she planned to relocate to Sonoma County and asking to be considered for an open position in the District for an English teacher. Respondent explained that she would be in the Santa Rosa area the following week and would be available for an interview at the District's convenience.
On or about August 20, respondent was interviewed by Thomas Lorch, the principal of the District's Analy High School, Timothy Williams, an English teacher at the school, and others. At the conclusion of the interview, Lorch offered respondent the vacant position. Her first day of work for the District was August 26,1999.
At its regular meeting on Thursday evening, September 9, the District's Board of Trustees took action to employ respondent, among other new teachers, effective August 26, 1999. On September 10, the District received verification from the Hemet Unified School District of respondent's years of experience and information that the latter district had granted her a one-year leave of absence for the 1999-2000 school year. On Monday, September *832 13, Susan Panas, the District's personnel manager, informed respondent by letter that the board had "approved your employment as a temporary teacher at Analy High School effective August 26, 1999."
On October 18, Panas notified respondent in writing that her salary would be increased retroactively because the District had received final confirmation of additional credits she had earned. Panas also asked respondent to stop by the office at her "earliest convenience" to sign her contract. On November 2, Panas sent respondent another reminder about signing the contract. On November 9, respondent signed the contract, which described her term of employment as commencing August 26, 1999, and terminating June 8, 2000, specified her placement on the certificated salary schedule, and identified her classification as temporary.
On April 20, 2000, because of the District's financial condition, the Board took action not to reemploy several temporary certificated employees, including respondent. On the same day, the District notified respondent pursuant to section 44954 that she would not be reemployed.

B. The Lawsuit

Respondent filed a petition for a writ of mandate and complaint for declaratory relief, seeking reemployment as a probationary teacher, back pay and benefits, and other relief. She alleged that the District had a duty under section 44916 to classify her as a probationary employee for the 1999-2000 school year because it failed to provide timely written notice that her employment was temporary, and that she must be deemed reemployed as a probationary employee for the following year because she was not notified otherwise before March 15, 2000.
Respondent submitted a declaration in support of the petition, stating in part that during her interview, no one told her the position was temporary. She declared that Lorch said the position would lead to permanent status with the District and that she would have to teach two probationary years before she could become a permanent teacher. She accepted the position based on these representations. She would not have left her permanent position in Southern California without being placed in a tenure track position. According to respondent, she first learned she was a temporary employee when she received the September 13 letter. She questioned personnel manager Panas about that classification before signing her contract on November 9. Panas replied, "That's just something this district does. Don't worry. If you get a good evaluation, they'll retroactively make you probationary." With that assurance, respondent signed the contract.
Opposing the petition, the District submitted declarations from Lorch, Panas, and Williams, which conflicted with certain of respondent's assertions. Lorch declared that he did not tell respondent her employment would lead to a permanent position, did not explain the tenure process to her, and did not represent the open position as permanent. He also declared that he always tells candidates for temporary positions that the employment is a temporary one-year contract. Panas declared that she prepared an announcement for the English teacher position in June 1999, which provided specifically that a successful candidate would be hired as temporary. She stated that the announcement was distributed to district schools, neighboring districts, and applicants requesting information.[3] Panas also denied *833 telling respondent that a good evaluation would provide her with probationary status. According to Panas, when respondent signed her contract, she did not mention her present claim that she had been hired as a probationary teacher. Panas also explained that verification of a new teacher's prior employment and academic unit accumulation is necessary to determine his or her correct placement on the District's salary schedule. By October 18, 1999, Panas had obtained final verification of the necessary information about respondent, and requested that she come to the office to sign her contract.
The trial court granted respondent's petition for writ of mandate and directed the District to reemploy her as a probationary certificated teacher effective with the commencement of the 1999-2000 school year.

DISCUSSION
To obtain a writ of mandate under Code of Civil Procedure section 1085, the petitioner must show a clear, present, and usually ministerial duty on the part of the respondent and a clear, present, and beneficial right in the petitioner to the performance of that duty. (Santa Clara County Counsel Attys. Assn. v. Woodside (1994) 7 Cal.4th 525, 539-540, 28 Cal. Rptr.2d 617, 869 P.2d 1142; Taylor v. Board of Trustees (1984) 36 Cal.3d 500, 507, 204 Cal.Rptr. 711, 683 P.2d 710.) A ministerial duty is an act that a public officer is obligated to perform in a prescribed manner required by law when a given state of facts exists. (Transdyn/Cresci JV v. City and County of San Francisco (1999) 72 Cal.App.4th 746, 752, 85 Cal.Rptr.2d 512.)
On appeal in a mandate proceeding, this court applies the substantial evidence test to the trial court's factual findings, if any. (Kreeft v. City of Oakland (1998) 68 Cal.App.4th 46, 53, 80 Cal. Rptr.2d 137; County of Del Norte v. City of Crescent City (1999) 71 Cal.App.4th 965, 973, 84 Cal.Rptr.2d 179.) When the duty asserted is one arising out of a statute, this court will undertake de novo review of the issues of statutory construction. (Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles (1997) 54 Cal.App.4th 53, 59, 62 Cal.Rptr.2d 600; Bergeron v. Department of Health Services (1999) 71 Cal. App.4th 17, 22, 83 Cal.Rptr.2d 481; see Taylor v. Board of Trustees, supra, 36 Cal.3d at pp. 504-507, 204 Cal.Rptr. 711, 683 P.2d 710.)
The parties make much of the conflicts in the declarations, but the record demonstrates that the basis for the trial court's decision was its interpretation of section 44916. Respondent alleged that the District had a ministerial duty under section 44916 to classify her as a probationary, full-time teacher for the 1999-2000 school year. Citing that section and California Teachers Assn. v. Governing Board (1987) 195 Cal.App.3d 285, 240 Cal.Rptr. 549, the court reasoned that respondent "did not receive a written statement clearly indicating the temporary nature of her employment at the beginning of her employment for the 1999-2000 school year, and thus she was deemed a probationary employee who could not be terminated after March 15, 2000." Whether the court correctly interpreted section 44916 is a question of law requiring our independent review, and the substantial evidence test does not apply.
*834 Section 44916, which concerns notice to employees of their classification, provides: "The classification shall be made at the time of employment and thereafter in the month of July of each school year. At the time of initial employment during each academic year, each new certificated employee of the school district shall receive a written statement indicating his employment status and the salary that he is to be paid. If a school district hires a certificated person as a temporary employee, the written statement shall clearly indicate the temporary nature of the employment and the length of time for which the person is being employed. If a written statement does not indicate the temporary nature of the employment, the certificated employee shall be deemed to be a probationary employee of the school district, unless employed with permanent status." (Emphasis added.)
The outcome of this case turns on the meaning of the phrase, "[a]t the time of initial employment." Settled principles of statutory construction govern our analysis. To interpret statutory language, we must ascertain the intent of the Legislature in order to effectuate the purpose of the law. (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1386, 241 Cal.Rptr. 67, 743 P.2d 1323.) We begin by scrutinizing the actual words of the statute, giving them their usual and ordinary meaning. (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 633, 59 Cal.Rptr.2d 671, 927 P.2d 1175.) If the language is not ambiguous, the plain meaning controls because the Legislature is presumed to have meant what it said. (Lennane v. Franchise Tax Bd. (1994) 9 Cal.4th 263, 268, 36 Cal. Rptr.2d 563, 885 P.2d 976.)
At the same time, we do not read the literal language of a statute in a vacuum or determine the meaning of a statute from a single word, phrase, or sentence. Words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. (People v. King (1993) 5 Cal.4th 59, 69,19 Cal.Rptr.2d 233, 851 P.2d 27; Lewis v. Superior Court (1999) 19 Cal.4th 1232, 1245, 82 Cal.Rptr.2d 85, 970 P.2d 872.) Furthermore, we must consider a clause or section in the context of the statutory framework as a whole. (DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382, 388, 20 Cal.Rptr.2d 523, 853 P.2d 978.) When several statutes touch upon a common subject, we must construe them in reference to each other. (Garcia v. McCutchen (1997) 16 Cal.4th 469, 476, 66 Cal.Rptr.2d 319, 940 P.2d 906; California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist, supra, 14 Cal.4th at pp. 642-643, 59 Cal.Rptr.2d 671, 927 P.2d 1175.) Generally we presume that when a word is used in a particular sense in one part of a statute, the same word used elsewhere is intended to have the same meaning. (Delaney v. Baker (1999) 20 Cal.4th 23, 41, 82 Cal.Rptr.2d 610, 971 P.2d 986.) Conversely, when the Legislature uses a different word or phrase in one part of a statute than it used in a similar statute concerning a related subject, we must presume that it intended a different meaning. (Campbell v. Zolin (1995) 33 Cal.App.4th 489, 497, 39 Cal. Rptr.2d 348.)
Respondent's theory, which the trial court accepted, is that the time of her "initial employment" occurred on or about August 26, 1999, when she began performance of her obligations for the District. Considered in isolation and read literally, the phrase is susceptible to that meaning. The word "initial" is ordinarily understood to mean "of or relating to the beginning," and a common dictionary definition of the *835 word "employment" is "activity in which one engages and employs his time and energies," such as work for which one's services are paid by an employer. (Webster's 3d New Internat. Diet. (1986) pp. 743, 1163.) But the term "employment" is equally susceptible to another common meaning, namely, the act of employing or hiring someone to perform a service. The District argues, based on the statutory scheme concerning the employment of temporary teachers, that the latter meaning was intended. According to the District, the "time of initial employment" for respondent occurred at the Board's regular meeting on Thursday evening, September 9, 1999, when it took formal action to employ her, thereby creating the employer-employee relationship. We agree with the District's reading of the statute.
One court has correctly observed that in the Education Code, the word "employment" is frequently used to mean the employer-employee relationship. (Thorpe v. Long Beach Community College Dist. (2000) 83 Cal.App.4th 655, 662, 99 Cal. Rptr.2d 897.)[4] Under that code, the power to employ and classify certificated employees is vested exclusively in the governing board of a school district. (See, e.g., §§ 44830, subd. (a), 44830.7, 44831, 44909, 44915, 44917, 44919.) Although a governing board may charge others with the responsibility of recommending persons for employment, it is the board itself that makes the employment determination. (See § 44830, subd. (a).)
With respect to temporary teachers, section 44920 explicitly empowers a governing board to employ such teachers under specified circumstances. In section 44916 itself, the sentence immediately following that in which the disputed phrase appears begins, "If a school district hires a certificated person as a temporary employee . . . ." (Emphasis added.) While the noun "employment" may be ambiguous, the verb "hires" is not. (See Poppers v. Tamalpais Union High School Dist. (1986) 184 Cal. App.3d 399, 404, 229 Cal.Rptr. 77.) The Legislature's reference to the district's hiring supports the conclusion that the "time of initial employment" and the time the employee is hired by the governing board are synonymous.
To take any official action, a governing board must act by formal majority vote of its membership. (§§ 35163, 35164.) It has long been held that in order to employ a teacher, a board must take action at a regular or special meeting. (See Barnhardt v. Gray (1936) 15 Cal.App.2d 307, 310, 59 P.2d 454 [two members of a three-person board had no power, when meeting on the street or elsewhere, to employ a teacher].) We recognize that under section 35161, a governing board may delegate to a district employee or officer any of its powers or duties, but there is nothing in this record that the District's board ever took action to delegate its power to employ temporary teachers.
*836 We also note that when the Legislature has intended consequences to attach to the date on which a certificated employee first began paid service for a district rather than on the date he or she was formally hired, it has stated so explicitly. For instance, for purposes of determining the seniority of probationary and permanent employees, section 44845 provides: "Every probationary or permanent employee employed after June 30, 1947, shall be deemed to have been employed on the date upon which he first rendered paid service in a probationary position." That the Legislature did not use similar terminology in section 44916, but referred instead to "the time of initial employment," suggests that a different meaning was intended.
We have not overlooked California Teachers Assn. v. Governing Board, supra, 195 Cal.App.3d 285, 240 Cal.Rptr. 549, upon which the trial court relied to interpret section 44916. The teacher in that case worked under a written contract as a temporary employee for several months in 1982. He taught again during the 1982-1983 school year without a contract. On March 17, 1983, when he inquired about the absence of a contract, the district presented a contract of temporary employment, backdated to September 9, 1982. He refused to sign it and the district did not employ him for the 1983-1984 school year. (Id. at pp. 290-291, 240 Cal.Rptr. 549.) By petition for writ of mandate, the teacher sought reinstatement as a probationary employee as of September 1983. The trial court granted the petition and the reviewing court affirmed. It noted that the teacher "did not receive a written statement concerning his classification as a temporary employee in July 1982, or when he began teaching at the beginning of the 1982-1983 school year." Citing section 44916, the court concluded that "[b]y providing no written statement of the temporary nature of employment at the beginning of employment for the 1982-1983 school year, [the] district's noncompliance triggered the statutory remedy: `the certificated employee shall be deemed to be a probationary employee of the school district . . . .' [Citation.]" (California Teachers Assn. v. Governing Board, supra, at pp. 292-293, 240 Cal.Rptr. 549.)
It is elementary that language in a judicial opinion is necessarily understood in accordance with the facts and issues before the court at the time, and an opinion is not authority for propositions that the court did not consider. (Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd. (1999) 19 Cal.4th 1182, 1195, 81 Cal. Rptr.2d 521, 969 P.2d 613.) The exact meaning of the statutory term, "the time of initial employment" simply was not at issue in California Teachers Assn. v. Governing Board, supra, 195 Cal.App.3d 285, 240 Cal.Rptr. 549, and the court's offhand and imprecise reference to the "beginning" of the teacher's employment in that case is not authority resolving the statutory construction problem confronting us in this case.
To summarize, we conclude that section 44916 requires a school district to provide a written statement to a new certificated temporary employee indicating that person's employment status and salary when its governing board takes formal action to hire the employee, rather than on the date that new employee first renders paid service to the district. Respondent's claim that this interpretation of section 44916 could lead to absurd and unfair results is not persuasive. She theorizes, for example, that a district could hire a new employee in the fall and not classify him or her as temporary until the spring. Under the statute, however, that scenario is exactly what would result in the teacher being deemed a probationary employee.
*837 Finally, respondent argues in passing that the September 13, 1999, letter did not meet the requirements of section 44916 because it did not include information about her salary schedule. What the argument overlooks, however, is that under section 44916, it is only the failure to indicate the temporary nature of the employment that results in the employee being deemed probationary. The statute does not impose either that or any other consequence or sanction if the statement omits the salary information. As the District points out, verification of a new employee's teaching experience and postgraduate units is required to establish a new teacher's placement on a salary schedule. Despite the statutory requirement, that information simply may not be available "at the time of initial employment."

DISPOSITION
The judgment is reversed and the trial court is directed to deny respondent's petition for writ of mandate. Costs to appellants.
We concur: STEIN, Acting P.J., and MARCHIANO, J.
NOTES
[1] Although the appeal has been taken from an order granting respondent's petition for writ of mandate, we construe that order as a judgment and refer to it as such. (See Cody v. Justice Court (1965) 238 Cal.App.2d 275, 277, fn. 1, 47 Cal.Rptr. 716.)
[2] All statutory references are to the Education Code unless otherwise stated.
[3] The trial court sustained respondent's objections to a statement in Lorch's declaration about the existence of a flyer announcing the position and a statement in Williams's declaration about what he assumed Lorch must have said to respondent, but otherwise overruled her objections to the declarations. Respondent did not object to Panas's declaration, which included her statement about preparing the vacancy announcement.
[4] Thorpe v. Long Beach Community College Dist., supra, 83 Cal.App.4th 655, 99 Cal. Rptr.2d 897, illustrates that the meaning of the term "employment" may vary with its statutory context. At issue were the conflict of interest provisions of the Government Code as applied to an employment contract between a school district and a school board member's spouse. Notwithstanding the broad general meaning of the term "employment" in the Education Code, the court held that the spouse's promotion to a newly created position constituted a new "employment" within the meaning of Government Code section 1090 and did not come within the exemption provided by Government Code section 1091.5, subd. (a)(6) for an "employment" existing a year before the election of the board member. (Thorpe, supra, at pp. 660-664, 99 Cal.Rptr.2d 897.)